Affirmed and Memorandum Opinion filed August 18, 2011.

 

In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-10-00574-CV



 

HOUSTON HOUSING AUTHORITY, Appellant

V.

YVONNE HOUSE AND ALL
OCCUPANTS, Appellees

 



On Appeal from County Court at
Law Number Four (4)

Harris County, Texas

Trial Court Cause No. 958233



 

MEMORANDUM OPINION

            In this forcible
detainer suit, appellant, Houston Housing Authority (“HHA”), appeals a judgment
in favor of appellee, Yvonne House (“House”).  In sixteen issues, HHA challenges
(1) sufficiency of the evidence supporting the trial court’s findings of fact
and conclusions of law and (2) the award of attorneys’ fees and possession to
House.  We affirm.

I.  Background

            House entered
into a written residential lease agreement with HHA to commence on April 1,
2008.  In the early morning hours of November 19, 2009, House began frying
chicken tenders.  While the chicken was cooking, House returned to the living
room and “dozed off.”  When House awoke, she discovered a grease fire in the
kitchen.  No one was injured, but the property sustained some damage.  While
repairs were performed, House was temporarily relocated to another apartment
unit within the same complex.  Following this incident, HHA discovered that
House had failed to secure the gas utility in her own name.

            On January
21, 2010, HHA filed a forcible entry and detainer action against House alleging
violations of the lease agreement.  The trial court rendered a take-nothing
judgment against HHA and awarded $1,000.00 in attorney’s fees to House.  Pursuant
to HHA’s request, the court issued findings of fact and conclusions of law. 
This timely appeal followed.

II.   Standard of Review

Findings of fact in a
bench trial have the same force and dignity as a verdict on
jury questions and are reviewed for legal and factual sufficiency of the
evidence by the same standards.  West v. Triple B Servs., LLP, 264
S.W.3d 440, 445 (Tex. App.—Houston [14th Dist.] 2008, no pet.).  We review
the trial court’s legal conclusions de novo.  BMC Software
Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002).

When examining a legal sufficiency
challenge, we review the evidence in the light most favorable to the challenged
finding and indulge every reasonable inference that would support it.  City of Keller v. Wilson,
168 S.W.3d 802, 822 (Tex. 2005).  We credit favorable evidence if a reasonable fact finder
could and disregard contrary evidence unless a reasonable fact finder could
not.  Id. at 827.  The evidence is legally sufficient
if it would enable a reasonable and fair-minded person to reach the verdict
under review.  Id.  There is “no evidence” or legally insufficient
evidence when (a) there is a complete absence of evidence of a vital fact, (b)
the court is barred by rules of law or evidence from giving weight to the only
evidence offered to prove a vital fact, (c) the evidence offered to prove a
vital fact is no more than a mere scintilla, or (d) the evidence conclusively
establishes the opposite of the vital fact.  See id. at 810; Merrell
Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997).  A party
attacking legal sufficiency
relative to an adverse finding on which it had the burden
of proof must demonstrate that the evidence conclusively
establishes all vital facts in support of the issue.  Dow
Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001).  The fact finder is the sole judge
of witness credibility and the weight to give their testimony.  See City of Keller, 168 S.W.3d at 819.

In a
factual sufficiency review, we consider and weigh all the evidence, both
supporting and contradicting the finding.  See Mar. Overseas Corp. v.
Ellis, 971 S.W.2d 402, 406–07 (Tex. 1998).  A party attacking factual
sufficiency with respect to an adverse finding on which it had the burden of
proof must demonstrate that the finding is against the great weight and
preponderance of the evidence.  Francis,
46 S.W.3d at 242.  We
set aside the finding only if it is so contrary to the overwhelming weight of
the evidence as to be clearly wrong and unjust.  Pool
v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986). We may not substitute our own
judgment for that of the trier of fact or pass upon the credibility of the
witnesses.  See Ellis, 971 S.W.2d at 407.  The amount of evidence
necessary to affirm a judgment is far less than that necessary to reverse a
judgment.  GTE
Mobilnet of S. Tex. v. Pascouet, 61 S.W.3d 599, 616 (Tex. App.—Houston [14th Dist.]
2001, pet. denied).

III.   Analysis

A.        The Fire        

            In issues one
through three, HHA argues the evidence is legally and factually insufficient to
support the trial court’s findings of fact 8, 17, and 18.  Specifically, the
court found as follows:

8.  On or about November 19, 2009, while cooking, a fire
accidentally broke out in the Defendant’s apartment.

. . .

17.  There is no evidence that the Defendant negligently
started the fire.

18.  There is sufficient evidence
to demonstrate that the fire was accidental.

            HHA argues
there is no evidence or, alternatively, insufficient evidence, that the fire in
House’s unit was accidental.  Instead, HHA contends the evidence conclusively
shows House’s negligence caused the fire.          

            The
undisputed evidence shows that, on November 19, 2009, House and her two-year-old
son were sleeping on the couch in the living room.  At approximately 3:30 a.m.,
House awoke, was hungry, and went into the kitchen to cook some chicken
tenders.  She returned to the living room, sat down, and “dozed off.”  House
testified that “[t]he last thing I remember hearing before I dozed off was
hearing it cook, you know, like the grease pop. . . . [s]o I knew it wasn’t
going to take long.”  When House awoke, she went into the kitchen and saw the
fire.  She called out for her uncle, who had been sleeping upstairs, to extinguish
the fire.  

Viewing the evidence in the light
most favorable to the challenged findings, we conclude the evidence is legally
sufficient to support the court’s determination that the fire was accidental.  As
the fact finder, the trial court was the sole judge of witness credibility and
could conclude the fire was accidental based on House’s testimony.  Further, after weighing all of the evidence,
we conclude the findings are not so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust.  Because there is sufficient
evidence to support the trial court’s finding that the fire was accidental, we
need not address HHA’s argument that the evidence conclusively shows the fire
was due to House’s negligence.[1]

In its fourth issue, HHA contends the
evidence is legally and factually insufficient to support the trial court’s
finding of fact 10: “Said fire caused a small amount of damage to the leased
premises, requiring the replacement or repair of the following: stove vent, two
overhead cabinets, and surrounding sheetrock.”  HHA further argues the court’s
finding that the damage was minimal is contradicted by the subsequent description
of the damage as well as finding of fact 12 that House had to be relocated to
another apartment after the fire. 

            At trial, Paula
Roberson, an assistant manager for HHA, testified that only the vent hood,
three cabinets, and the surrounding sheetrock were replaced as a result of the
fire, and neither the stove nor any other appliance was damaged.  Although House
was relocated to another apartment while repairs were made to her unit, this
fact alone does not contradict the court’s finding of minimal damage.  Nothing
in the record indicates how long House remained at the new location or whether
the relocation was unusual or simply standard procedure when repairs are made
to a unit.  The evidence is sufficient to support the trial court’s finding
that the fire caused a small amount of damage to the apartment.  

            In its fifth
issue, HHA contends the evidence is legally and factually insufficient to
support the trial court’s finding of fact 11 that no one was injured.  HHA does
not dispute the fact no one was injured by the fire; rather, HHA contends the finding
is “vague and confusing” and argues “[t]o the extent that it means that the
trial court found there was no property damage or injury to HHA’s premises from
the fire, then HHA does challenge this finding ….”  HHA’s argument is without
merit.  The court’s finding that “[n]o one was injured” is not vague and
clearly refers to people, not property.  Moreover, HHA concedes no one was
injured by the fire.

            In sum, the
evidence is legally and factually sufficient to support the trial court’s
findings of fact 8, 10, 11, 17, and 18.  We overrule issues one through five.    

In issues six and seven, HHA contends the evidence
conclusively shows the fire was a serious violation of a material term of the
lease because the fire was caused by House’s negligence.  As such, HHA argues that
the trial court erred in its conclusion of law 19: “[t]here is no evidence that
the accidental fire was a material breach of the lease agreement.”

In support of its argument, HHA relies on Part II,
Section 16, subsection (a) of the lease, which states, in relevant part, as
follows: “This Lease may be terminated for serious or repeated violations of
material terms of the Lease, including without limitation: . . . failure to
fulfill any other Tenant obligation set forth in Section 7 or 9 or elsewhere in
the Lease . . . .”  HHA argues House violated the following tenant obligation
set forth under Section 9: “Take reasonable precautions to prevent fires,
especially any fires caused by the Tenant’s, household member’s or guest’s
carelessness, negligent actions or neglect, and refrain from storing or keeping
flammable materials on or near the premises.”  HHA argues House failed to
fulfill this tenant obligation when she negligently caused the fire and, in
doing so, violated material terms of the lease.  However, as noted above, there
is sufficient evidence the fire was accidental and not the result of negligence. 
Further, there is nothing in the record suggesting House failed to take
reasonable precautions or kept flammable materials in her apartment. 
Consequently, we overrule HHA’s sixth and seventh issues.

B.        The Utilities

In issues eight through ten, HHA argues the evidence is
legally and factually insufficient to support findings of fact 3, 4, and 5.  Specifically,
the court found as follows:

3.  No provision in the lease or the Utility Service Letter
states that failure to secure utilities in the lessee’s name is grounds for
eviction.

4.  No provision in the lease or the Utility Service Letter
states that failure to secure utilities in the lessee’s name constitutes a
material breach of the lease.

5.  The Utility Services Letter provides one remedy only:
the ability of HHA to terminate (“cut off”) services.

 

            HHA contends
House’s failure to secure the gas utility in her name before the move-in date was
a serious violation of the lease and constituted grounds for termination and
eviction.  In support, HHA cites Part II, Section 9, subsection (cc) of the
lease, which requires the tenant “[a]bide by necessary and reasonable rules and
regulations applicable to the AGENCY’s Admissions and Continuing Occupancy
Policy (ACOP) . . . .”  HHA then cites Section IX, subsection A.2 of the ACOP,
which states “[i]f a resident or applicant is unable to get utilities connected
because of bad credit or a previous balance owed to the utility company at a
prior address, the resident or applicant will not be permitted to move into a
unit with resident-paid utilities.”  However, there is no evidence in the
record that House failed to have utilities connected because of bad credit or a
prior balance; rather, House testified she did not secure the utilities in her
name because the deposit was high, and her sister put the utilities in her name. 
Further, the ACOP provides that a tenant’s failure to have utilities connected
due to bad credit or a previous balance owed will only result in the tenant
being denied permission to move into a unit with resident-paid utilities—it contains
no provision about termination of an existing lease or eviction.

            HHA also relies
on Part II, Section 7, subsection (c)(2) of the lease, which provides as
follows:

Tenant agrees to supply the AGENCY, when requested and
within 10 days of when change occurs, with accurate information about: . . .
income and source of income of all family members; assets and related
information necessary to determine eligibility; annual income; adjusted income;
and rent.  Failure to supply such information or providing false information,
is a serious violation of the Lease and grounds for termination.

            According to
HHA, House committed a serious violation of the lease when she misrepresented
information in the Utility Service Letter.  The letter signed by House provides
as follows: “I acknowledge all applicable utilities must be connected in my
name by the move in date shown above.  The community is not responsible for my
utility costs at any point past my move in date and if utilities are not placed
in my name by the move in date they may be disconnected at any time by
management without notice.”  HHA’s argument is without merit.  Subsection
(c)(2) quoted above concerns income-related information necessary to determine
a tenant’s eligibility and makes no mention of information related to a
resident’s utilities.  Further, there is no evidence, nor does HHA contend, that
House misrepresented any of the information enumerated in subsection (c)(2).  There
is no provision in either the lease or the ACOP suggesting failure to secure
utilities in one’s own name constitutes a material breach or grounds for
eviction.  Further, the Utility Service Letter states that, if utilities are
not placed in a resident’s name by the move-in date, they may be disconnected; there
is no reference to lease termination or eviction.

            We conclude the
evidence is legally and factually sufficient to support the trial court’s
findings of fact 3, 4, and 5.  Accordingly, we overrule appellant’s eighth,
ninth, and tenth issues.

C.        Breach of the
Lease

In issues eleven through fourteen, HHA contends the
evidence is legally and factually insufficient to support the trial court’s
findings of fact 14 and 15 and conclusions of law 20 and 21.  These findings
and conclusions state as follows:  

14.  Under the Admissions and Continuing Occupancy Policy
(hereinafter “ACOP”), Plaintiff shall terminate the lease only for serious and
repeated violations of the material provisions of the lease or other good
cause.  

15.  Said lease contains terms that are ambiguous as to
whether “intent” is required for “breach” of the lease.  

 20.  There is no evidence that failure to secure utilities
in the lessee’s name is a material breach of the lease.  

21.  There is no evidence that Congress intended that the
failure to obtain utilities in the lessee’s name would suffice as a material
breach of the lease agreement.

            In its eleventh
issue, HHA correctly points out that finding of fact 14 misstates the relevant ACOP
provision.  Section VIII, subsection (c)(1) of the ACOP states “HHA or its
manager shall terminate the lease only for serious or repeated
violations of the material provisions of the lease or other good cause”
(emphasis added) (citation omitted).  Notwithstanding the misstatement, HHA’s
argument is unavailing.  As discussed above, there is no evidence House
negligently caused the fire or committed any other serious or repeated
violations.

            In issue twelve, HHA
contends the trial court’s finding of fact 15—that the lease is ambiguous as to
whether intent is required to find a breach—is unsupported by the evidence.  HHA
argues intent is not required to find a breach and House’s negligent conduct in
causing the fire violated the terms of the lease.[2] 
However, assuming intent is not required to find a breach of the lease, the
evidence is legally and factually sufficient to support the trial court’s
finding that the fire was accidental and did not constitute a breach of the
lease for the reasons previously discussed.

            In its thirteenth
issue, HHA challenges the trial court’s conclusion of law 21 that Congress did
not intend for failure to obtain utilities in one’s own name to constitute a
material breach of the lease agreement.  In support, HHA cites 24 CFR §
966.4(l)(2)(iii)(B), (C), which provides as follows:

(2) Grounds for termination of tenancy.  The [Public
Housing Agency] may terminate the tenancy only for:

. . .

            (iii) Other good cause.  Other good cause
includes, but is not limited to, the following:

. . .

                        (B) Discovery after admission of
facts that made the tenant ineligible;

                        (C) Discovery of material false
facts or fraud by the tenant in connection with an application for assistance
or with                                            reexamination of income . .
. .

  

As previously noted, there
is nothing in the lease agreement, the ACOP, or Utility Service Letter indicating
failure to secure utilities in one’s own name renders a tenant ineligible or
otherwise provides grounds for termination of the lease or eviction.  House’s failure
to secure the gas utility in her name does not constitute good cause under 24
CFR § 966.4(l)(2)(iii).

            In its fourteenth
issue, HHA challenges the trial court’s conclusion of law 20 stating there is
no evidence that failure to secure utilities in the lessee’s name is a material
breach of the lease.  Because we have previously addressed this argument, we
need not do so again here.  We overrule HHA’s eleventh, twelfth, thirteenth,
and fourteenth issues.

D.        Attorneys’
Fees and Possession of the Premises

            In issues fifteen
and sixteen, HHA argues the trial court abused its discretion by awarding
attorneys’ fees to House and failing to render judgment of possession to HHA in
its forcible detainer action.  The lease provides HHA is entitled to attorneys’
fees only if it prevails in an eviction proceeding.[3] 
Here, the record is clear that House prevailed in the proceeding below.  As the
prevailing tenant, House was entitled to recover attorneys’ fees.[4] 
Further, it was within the trial court’s discretion to conclude the fire was an
accident and neither the accident nor the failure to place utilities in House’s
own name resulted in a material breach of the lease agreement.  We conclude the
court did not abuse its discretion by awarding attorneys’ fees or rendering
judgment of possession to House.  We overrule HHA’s fifteenth and sixteenth
issues.

IV.      Conclusion

            We affirm the trial court’s judgment.

                                                                                                                        

                                                                                    

                                                                        /s/        Charles
W. Seymore

                                                                                    Justice

 

Panel consists of Chief
Justice Hedges and Justices Seymore and Boyce.









[1]
We further note that HHA did not plead a negligence cause of action in its
complaint, and no evidence of the elements of a negligence cause of action was
introduced at trial.





[2]
House relies on two provisions previously discussed above.   Part II, Section 9
requires a tenant to “[t]ake reasonable precautions to prevent fires,
especially any fires caused by the Tenant’s . . . carelessness, negligent
actions or neglect . . . .”  Part II, Section 16 states, in relevant part, as
follows: (a) “This Lease may be terminated for serious or repeated violations
of material terms of the Lease, including without limitation: . . . failure to
fulfill any other Tenant obligation set forth in Section 7 or 9 or elsewhere in
the Lease . . . .”





[3]
Part II, Section 17 provides as follows: “In the event the AGENCY evicts a
Tenant by judicial proceedings, and the AGENCY prevails in the eviction
proceedings, the AGENCY shall be entitled to recover from the TENANT reasonable
attorneys’ fees and court costs.” 





[4]
Section 24.006 of the Texas Property Code provides, in relevant part, as
follows: “If the landlord provides the tenant notice under Subsection (a) or if
a written lease entitles the landlord or the tenant to recover attorney’s fees,
the prevailing tenant is entitled to recover reasonable attorney’s fees from
the landlord . . . . ”  Tex. Prop. Code Ann. § 24.006(c) (West 2000).  The
record reflects that HHA provided House a written demand to vacate the
premises.